## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

SARA JEAN GIBSON,

      Plaintiff,

v.                                                                2:23-cv-154-NPM

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

      Plaintiff Sara Jean Gibson seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 7),[1] Gibson filed an opening brief (Doc. 16), and the Commissioner responded (Doc. 18). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

      The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On April 23, 2020, Gibson filed an application for disability insurance benefits. (Tr. 253). In the application, Gibson asserted an alleged onset date of February 8, 2016, alleging disability due to the following: multiple sclerosis, anxiety, and vertigo. (Tr. 76-77, 92-93). As of the onset date, Gibson was 40 years old with a college degree in business communications. (Tr. 44, 76, 92, 305). Gibson previously worked as a relationship manager, establishing and maintaining

---

[2]  *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3]  *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4]  *See* 20 C.F.R. § 404.1511.

relationships with her company's clients. (Tr. 88, 110, 296-97, 305).

On behalf of the administration, a state agency [5] reviewed and denied Gibson's application initially on November 18, 2020, and upon reconsideration on December 21, 2021. (Tr. 76-91, 92-113). At Gibson's request, Administrative Law Judge (ALJ) Maria C. Northington held a hearing on April 11, 2022. (Tr. 39-75). On May 2, 2022, the ALJ issued an unfavorable decision finding Gibson not disabled. (Tr. 16-34). Gibson's timely request for review by the administration's Appeals Council was denied. (Tr. 4-7). Gibson then brought the matter to this court, and the case is ripe for judicial review.

## C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a

qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Gibson had not engaged in substantial gainful activity since February 8, 2016, the alleged onset date. (Tr. 18). At step two, the ALJ characterized Gibson's severe impairments as: multiple sclerosis, cervical spondylosis with C5 plaque, anxiety beginning therapy in 2021, depression, alcohol dependence, and cannabis-use disorder. (Tr. 19). At step three, the ALJ determined Gibson did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 20).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as follows. Light work involves the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task nor would it cause her to leave the workstation. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to perform no crawling, no crouching and no climbing of ladders/ropes/scaffolds. In the course of work, the

claimant is to have no exposure to extremes of heat, humidity or cold temperatures. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools or equipment. Secondary to mental impairments, the claimant retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work. The claimant can make judgments regarding simple work-related decisions.

(Tr. 23). Consequently, the ALJ found Gibson was unable to perform her past relevant work. (Tr. 32). At step five, the ALJ found Gibson could perform other work that exists in significant numbers in the national economy. (Tr. 33-34). In support, a vocational expert testified that an individual of Gibson's age, education, work experience, and RFC can perform the following representative occupations:

- *Electronic Worker,* DOT #726.687-010, light; SVP 2, with 52,000 jobs in the national economy;

- *Plastics Assembler,* DOT #712.687-010,[6] light, SVP 2, with 75,000 jobs in the national economy;

- *Final Assembler*, DOT #713.687-018, sedentary, SVP 2, with 65,000 jobs in the economy;

- *Semi-Conductor Bonder*, DOT #726.685-066, sedentary SVP 2, with 38,000 jobs in the economy.

(Tr. 33).[7]

---

[6] By typographical error, the ALJ incorrectly identified this as DOT #772.687-010 (glass worker).

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary

- 6 -

Thus, for purposes of the Act, the ALJ concluded Gibson was not disabled from February, 8, 2016, the alleged onset date, through December 31, 2021, the date last insured. (Tr. 34).

## II.   Analysis

Gibson's appeal presents the following issues for review:

(1)   Whether the ALJ committed reversible error by omitting Gibson's ability to perform math at a fifth-grade level from the RFC;

(2)   Whether the ALJ committed reversible error by omitting manipulative limits from the RFC;

(3)   Whether the ALJ erred by finding Gibson could perform work with an SVP level of 2;

(4)   Whether the ALJ adequately considered Gibson's moderate limitation in concentrating, persisting, or maintaining pace; and

(5)   Whether substantial evidence supports the ALJ's step-five finding that a significant number of vocationally relevant jobs exist in the national economy.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and

---

abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ did not err by omitting Gibson's fifth-grade level math skills from the RFC.

In April 2015, Dr. Kimberly Buck completed a neuropsychological evaluation

of Gibson. Even though Gibson had a college degree, Dr. Buck opined that Gibson's math performance was at a fifth-grade level. (Tr. 316). But the ALJ did not include this limitation in the RFC or the hypothetical question posed to the vocational expert. So Gibson argues the hypothetical question was insufficient, and the RFC is not based on substantial evidence. (Doc. 16 at 6-9). This argument lacks merit.

As an initial matter, Dr. Buck's evaluation occurred in April 2015—almost a year before the alleged onset date. As such, her opinions therein are of little relevance. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018). What's more, an ALJ need not include findings in the hypothetical question to the vocational expert when the ALJ had properly rejected them as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Here, the ALJ explained that she found Dr. Buck's opinion unpersuasive because her overall impression was that Gibson could not return to work. (Tr. 317). And this is a finding reserved for the ALJ. 20 C.F.R. § 404.1520b(c)(3)(i); *Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, *2 (11th Cir. July 21, 2021) (ALJ properly rejected doctor's opinion that claimant was unable to work because "such a finding is reserved to the Commissioner, not a claimant's physician"). Additionally, it seems Gibson met with Dr. Buck no more than once, which is further reason to discount her opinions. *See* 20 C.F.R. § 404.1520c(c)(3)(ii).

Gibson also contends that the ALJ addressed Dr. Buck's opinion only once in

the decision. But this is untrue. Although she addresses Dr. Buck by name once in the opinion, she otherwise considers Dr. Buck's opinions throughout. (Tr. 21, 22, 26, 31). Besides, it is not reversible error when an ALJ fails to identify a physician by name so long as the ALJ summarized the physician's treatment notes and it did not affect the ALJ's ultimate decision. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015). Such is the case here.

Even if the ALJ should have included Gibson's purported mathematical deficiencies in the RFC, her failure to do so was harmless. The ALJ concluded, based on vocational expert testimony, that Gibson could perform work as an electronic worker, a plastics assembler, a final assembler, and a semi-conductor bonder. (Tr. 33). The DOT defines each of these jobs as a math level 1, which is the lowest level provided in the DOT. *See* DICOT 726.687-010, Electronics Worker, 1991 WL 679633; DICOT 712.687-010, Assembler, Plastic Hospital Products, 1991 WL 679245; DICOT 713.687-018, Final Assembler, 1991 WL 679271; DICOT 726.685-066, Bonder, Semiconductor, 1991 WL 679631. So even assuming the ALJ had limited Gibson's mathematical skills to a fifth-grade level, she would still be able to work in the identified roles. *Cf. Peterson v. Comm'r of Soc. Sec.*, No. 2:19-cv-566-FTM-29NPM, 2020 WL 7364600, *5 (M.D. Fla. Sept. 25, 2020), *report and recommendation adopted*, 2020 WL 6708022 (Nov. 16, 2020), *aff'd*, 2021 WL 3163662 (11th Cir. July 27, 2021) (finding harmless error when ALJ failed to

include kindergarten-level math skills in RFC because the DOT defined the identified jobs as a math level 1, which the vocational expert testified is the lowest level possible);[8] *see also Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005) (observing that if an ALJ errs in omitting a functional limitation from the residual functional capacity, the omission is harmless if it would not have altered the testimony of the vocational expert).

## C. The ALJ did not err by omitting manipulative limitations from the RFC.

Gibson once again cites to Dr. Buck. In her neuropsychological evaluation, she determined that Gibson has fine motor difficulties. Specifically, she opined that Gibson evidenced "severely deficient performance tasks of speeded attention with a motor component and mental switching" and "her performance on a task of speeded fine motor coordination was in the borderline deficient range for her dominant hand and in the severely deficient range for her non-dominant hand." (Tr. 317). Gibson argues the ALJ erred by not performing a persuasiveness analysis for this opinion and otherwise including it in the RFC.

But as noted above, Dr. Buck's evaluation is of little relevance since it predates the alleged onset date, and she only treated Gibson once. Furthermore, the findings of Dr. Buck quoted above do not state any work restrictions and, thus, are

---

[8] Notably, Gibson's counsel unsuccessfully advanced this same argument in *Peterson*.

not vocationally relevant "medical opinions," that require a persuasiveness analysis. 20 C.F.R. §§ 404.1513(a)(2), 404.1520b(c)(3)(i). So this argument fails.

Gibson also reads other evidence in the record as compelling the inclusion of her manipulative limitations. For instance, she cites various notes of Dr. Maniar Sanjeev, but the cited evidence is largely Dr. Sanjeev recording Gibson's subjective complaints of tingling/numbness, weakness, and fatigue. (Doc. 16 at 10). Dr. Sanjeev also noted Gibson's relapsing/remitting MS and that she exhibited slight limping. (Tr. 357, 373, 381, 474, 496, 512, 609). And Gibson also cites her hearing testimony that she drops things, has cut herself trying to prepare food, and has difficulty grasping items. (Tr. 57, 59). But simply citing other evidence in the record to support her manipulative limitations will not suffice. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). It appears Gibson is asking the court to reweigh the evidence. But it cannot.

Although Gibson cites portions of Dr. Sanjeev's notes, the remainder of his notes reveal Gibson exhibited normal motor functioning, including normal sensation, reflexes, range of motion, and coordination. He also noted that objective observations remained stable and normal, including Gibson's motor examination

being intact with no focal atrophy; her muscle tone was normal; she evidenced 5/5 normal power and strength in all distal upper and lower extremity muscles; her coordination was normal; and she had a normal range of motion. And updated imaging revealed the stable condition of Gibson's MS on multiple occasions. (Tr. 27, 355-57, 364-65, 372-73, 380-81, 405, 446-452, 464-66, 472-74, 480-81, 487-89, 495-96, 503, 510-12, 607-09, 754-56, 762-63, 769-71, 786-88). Other treaters from Dr. Sanjeev's office made similar observations. (Tr. 599-600, 674-75, 731-33, 741-42, 778-79, 794-96, 804-05, 813-15, 823-25). The remainder of the record also includes normal findings, such as normal/full range of motion in wrist and fingers; no difficulty with balance or gait; no neurological or motor deficiency; 5/5 grip strength; and normal ability to grasp, pinch, and manipulate. (Tr. 324, 329, 336, 341, 650, 654, 719, 852, 858, 864, 870).

As for Gibson's hearing testimony, the ALJ explained that he found Gibson's subjective statements concerning intensity, persistence, and limiting effects of her symptoms inconsistent with the record. (Tr. 26). Gibson never disputed this conclusion, so she has abandoned any challenge to it. *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

Based on the foregoing, substantial evidence supports the ALJ's omission of any manipulative limits from the RFC.[9] Thus, there is no reversible error as to this issue.

### D.   The ALJ did not err in finding Gibson could perform work at an SVP level of 2.

Before Gibson's claim was presented to the ALJ, a disability examiner with the state agency found that Gibson could perform work that requires only "a very short, on the job training period" (Tr. 117, 119, 129, 132), which Gibson argues would equate to an SVP 1. Thus, she contends the ALJ erred by finding that she could perform work at an SVP level 2. But this ignores that SVP 1 jobs have no training period and that knowledge commensurate with SVP 2 work can be acquired before the job begins. Both SVP 1 and SVP 2 jobs are unskilled.

Time and again, Gibson's counsel have copy and pasted this same argument into the briefing submitted on their clients' behalf. And every time, the court has rejected this argument. *See, e.g.*, *Brakefield v. Comm'r of Soc. Sec.*, No. 2:23-cv-24-KCD, 2024 WL 303060, *4 (M.D. Fla. Jan. 26, 2024); *Flores v. Kijakazi*, No. 8:22-cv-958-WFJ-AEP, 2023 WL 6782270, *7-8 (M.D. Fla. Aug. 14, 2023), *report and recommendation adopted*, 2023 WL 5697385 (Sept. 5, 2023); *Poelker v. Comm'r of*

---

[9] Notably, Gibson turns a blind eye to the fact that the state-agency determinations also omitted any manipulative limitations (Tr. 85, 107) even though she argues—erroneously—in the next section that such determinations are binding.

*Soc. Sec.*, No. 2:21-cv-880-JLB-NPM, 2023 WL 6940241, *4 (M.D. Fla. Mar. 10, 2023); *Hull v. Comm'r of Soc. Sec.*, No. 2:21-cv-789-JLB-NPM, 2023 WL 5933342, *4 (M.D. Fla. Mar. 8, 2023); *Spencer v. Comm'r of Soc. Sec.*, No. 2:22-cv-18-JES-KCD, 2022 WL 19474741, *5 (M.D. Fla. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 2674700 (Mar. 29, 2023); *Guth v. Comm'r of Soc. Sec.*, No. 2:21-cv-106-JLB-NPM, 2022 WL 8211404, *10 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, 2022 WL 4115784 (Sept. 9, 2022); *Whitney v. Comm'r of Soc. Sec.*, No. 2:21-cv-217-JES-NPM, 2022 WL 8208682, *6 (M.D. Fla. Aug. 1, 2022), *report and recommendation adopted*, 2022 WL 4298661 (Sept. 19, 2022); *Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547, *10 (M.D. Fla. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 736176 (Mar. 11, 2022); *Garrow v. Saul*, No. 5:19-cv-586-OC-18JBT, 2020 WL 5802493, *4 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted sub nom.* 2020 WL 5797867 (Sept. 29, 2020). Offering no rationale for the court to change course, it is time for counsel to retire this argument.

### E.   The ALJ adequately accounted for Gibson's moderate limitation in concentrating, persisting, or maintaining pace.

At steps two and three of the sequential evaluation, the ALJ assesses the functional impacts of mental-health impairments across four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing

oneself. *See* 20 C.F.R. § 404.1520a(c)(3); SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ rates the limitation using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 404.1520a(c)(4). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. *Cf.* 20 C.F.R. § 404.1520a(c)(4) & (d). And at step five in the sequential analysis, an ALJ must account—explicitly or implicitly—for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).

Here, the ALJ found that Gibson had a moderate limitation in the domain of concentrating, persisting, or maintaining pace. (Tr. 22). Apart from the RFC, the ALJ does not seem to have accounted, implicitly or explicitly, for this limitation in the hypothetical question to the vocational expert. And standing alone, an RFC that limits the claimant to unskilled work may not adequately account for a moderate

limitation in this domain. *See, e.g.*, *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 960 (11th Cir. 2010). But that is not all that we have here.

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180. On that score, the ALJ explained:

> In addressing the claimant's moderate limitation in the ability to concentrate, persist, or maintain pace, the claimant is limited to understanding and remembering simple instructions, maintaining focus to perform simple tasks, and is otherwise able to render simple work-related decisions. **This is justified in light of the grossly normal cognitive findings throughout care and the psychological evaluation**.

(Tr. 30 (emphasis added)). Substantial evidence supports the ALJ's conclusion.

Even Dr. Buck's examination suggests that Gibson "performed in the average range on tasks of simple verbal and non-verbal attention and concentration, along with more complex nonverbal attention tasks that required working memory and mental manipulation." (Tr. 316). Other examiners repeatedly observed that Gibson exhibited normal behavior, thought content, and judgment; and her recent and remote memory, attention, and fund of knowledge were all intact. (Tr. 329, 336, 341, 356, 364, 372, 380, 465, 480, 487-88, 495, 503, 510-11, 599, 607-08, 674, 732, 741, 754-55, 762, 770, 778, 786-87, 795, 804, 813-14, 824, 858, 864, 870). Additionally,

Dr. Michael Inman performed a consultative psychological examination. (Tr. 709-14). Therein, he opined that Gibson's thought processes were logical and goal oriented without tangential or circumstantial flight of ideas; she had an average IQ; she was well prepared and organized for the evaluation, including supplying her medical records and completing a history form; and her cognitive skills were well preserved. (Tr. 711-13). Dr. Inman also noted that Gibson was able to follow directions, remember the appointment, arrange for transportation, arrived early, and even took her own notes during the evaluation. (Tr. 712-13). Gibson's minimal and conservative mental treatment also bolsters the ALJ's finding. (Tr. 710, 872-84). Finally, the ALJ observed Gibson's hobbies include playing music and growing orchids, which require focus and attention to detail. (Tr. 22). She also watches TV and plays solitaire for roughly 90 minutes daily, and she drives three to four times per week. (Tr. 22, 49, 53).

To counter this plethora of evidence, Gibson cites to one page from Dr. Rajan Sareen's notes where he observed "decreased concentration." (Tr. 720). This does not serve to displace the foregoing evidence. And she cites to Dr. Inman's diagnosis of depression, anxiety, and alcohol abuse as well as his observations that Gibson had mild difficulty going from sit-to-stand after sitting for an hour; she groaned as she stood; her observed affect was tearful; she worried about her future given her MS; and she was able to recall only one out of four words on a free recall after fifteen

minutes. (Doc. 16 at 16 (citing Tr. 712-14)). But it is unclear how this relates to concentration, persistence, or pace, and Dr. Inman's other opinions (as described above) are on point.

"Because the medical evidence showed that [Gibson] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [Gibson's] functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace." *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017). Thus, there is no reversible error.

### F. Substantial evidence supports the ALJ's finding that a significant number of vocationally relevant jobs exist in the national economy.

While the claimant always bears the burden of proving that she is incapable of performing any substantial gainful activity, the administration has the initial burden at step five to show that there are a significant number of jobs that can be performed by someone with the claimant's age, education, work experience, and RFC. To satisfy this burden, the administration routinely relies on the opinions of vocational experts who testify during the ALJ hearings.

A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). And because an ALJ may rely upon a vocational expert's knowledge or expertise, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838,

839 (11th Cir. 2012), we are only concerned with whether the vocational expert's testimony constitutes substantial evidence and not whether substantial evidence supports the vocational expert's testimony. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).

The Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant*, 451 F. App'x at 839; *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (same). Rather, a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required. *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011). So, a vocational expert's number-of-jobs testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The regulations do not require any degree of precision, and the available data in this area is imperfect. Moreover, the traditional rules of evidence do not apply, and opinion testimony in this kind of proceeding is not subject to litigation-like scrutiny. But a vocational expert's testimony will fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology contains several significant mistakes and thereby lacks a "baseline of reliability." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d

1277, 1285 (11th Cir. 2020).

The ALJ included the vocational expert's resume as part of the record, which reflects he is well qualified with over thirty-five years of experience in the vocational rehabilitation field and has been a vocational expert for the social security administration since 1992. He also holds a master's degree in rehabilitation counseling from the University of Scranton. (Tr. 272-74). The vocational expert testified that a hypothetical claimant with Gibson's RFC could work as an electronic worker, with 52,000 jobs in the national economy; a plastics assembler, with 75,000 jobs in the national economy; a final assembler, with 65,000 jobs in the economy; and a semi-conductor bonder, with 38,000 jobs in the economy. (Tr. 71). However, in the ALJ's decision, she cited the wrong DOT number for the plastics-assembler occupation. Thus, the argument goes, there is no way to know which DOT number the ALJ was referencing, and these 75,000 jobs cannot be considered. This would significantly decrease the number of jobs for the representative occupations that Gibson is capable of working—from 230,000 to 155,000. And, in her view, this error alone necessitates a remand. (Doc. 16 at 23).

Although it is true that the ALJ identified the wrong DOT number, this error is harmless because, at the hearing, the vocational expert identified it correctly. And the ALJ otherwise incorporated the proper information into her opinion, including the number of available jobs. The ALJ's blunder seems to have been nothing more

than a scrivener's error. Either way, she correctly applied the 75,000 jobs available nationally, which is the key component of a step-five finding. Thus, there is no inconsistency between the ALJ's decision and the vocational expert's testimony. Plus, the vocational expert identified, and the ALJ incorporated, three other occupations. *See Campbell v. Comm'r of Soc. Sec.*, No. 6:18-cv-2189-ORL-MAP, 2019 WL 6463983, *5 (M.D. Fla. Dec. 2, 2019) ("Even assuming the reference to the wrong DOT code is more than a simple mistake, because the ALJ identified two other jobs Plaintiff can perform, the error is clearly a harmless one.").

Not done yet, Gibson argues the job estimates provided by the vocational expert were "dramatically overstated." (Doc. 16 at 25). Citing figures in the Occupational Employment and Wage Survey ("OEWS"), she argues the number of jobs in the electronics-worker, final-assembler, and semi-conductor-bonder occupations are much lower than the vocational expert asserted. But this court has previously considered and rejected such OEWS-based arguments. *See Mccutcheon v. Comm'r of Soc. Sec.*, No. 8:19-cv-3023-T-MAP, 2021 WL 268197, *4 (M.D. Fla. Jan. 27, 2021). This is because an ALJ is only required to independently verify a vocational expert's testimony "when there is a conflict between the testimony and the DOT." *Id.* (citing *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019)); *Perez v. Kijakazi*, No. 21-cv-23740, 2022 WL 17094932, *9 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 21-23740-civ, 2022 WL

17093619 (S.D. Fla. Nov. 21, 2022) (noting that ALJ has no affirmative duty to resolve conflicts with sources outside the DOT). The purported conflict here is between the vocational expert's testimony and the OEWS, so the ALJ was not required to address it.[10]

Indeed, Gibson's counsel never raised this purported conflict to the ALJ, questioned the vocational expert about his methodology, or otherwise objected to the vocational expert's testimony on these grounds. Courts have routinely "found a [vocational expert's] testimony regarding job numbers to be substantial evidence even when the basis for those calculations was not provided," and have rejected a claimant's "post-hearing research" into the jobs data discussed by the vocational expert. *Santana v. Kijakazi*, No. 1:21-cv-23680, 2023 WL 2479768, *7 (S.D. Fla. Feb. 22, 2023), *report and recommendation adopted*, 2023 WL 2477509 (Mar. 13, 2023) (collecting cases); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (refusing to consider occupational-employment statistics presented for the first time to the district court). Besides, the relevant inquiry is not whether the vocational expert's testimony is supported by substantial evidence; it is whether the ALJ's decision is. *Pace*, 760 F. App'x at 781. Since there is no apparent

---

[10] Gibson's counsel has previously raised a similar argument—based on the Occupational Information Network and the Occupational Retirement Survey—which the court rejected for the same reason. *See, e.g.*, *Hill v. Comm'r of Soc. Sec.*, No. 2:22-cv-39-SPC-NPM, 2023 WL 2919821, *8 (M.D. Fla. Jan. 31, 2023), *report and recommendation adopted,* 2023 WL 2728220 (Mar. 31, 2023).

inconsistency between the vocational expert's testimony and the DOT, substantial evidence supports the ALJ's step-five finding.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 22, 2024.

NICHOLAS P. MIZELL
United States Magistrate Judge